| | |
|---|---|
| SETH OGILVIE and NANCI DONACKI-THOMPSON, individually and on behalf of all others similarly situated,<br><br>        **Plaintiffs,**<br><br>    v.<br><br>OPTIMAL BLUE, LLC; BLACK KNIGHT, INC.; CONSTELLATION SOFTWARE, INC.; GUARANTEED RATE INC.; CROSSCOUNTRY MORTGAGE, LLC; PENNYMAC LOAN SERVICES, LLC; NEW AMERICAN FUNDING, LLC; CMG MORTGAGE, INC.; CHURCHILL MORTGAGE CORPORATION; FIRST COMMUNITY MORTGAGE, INC.; MOVEMENT MORTGAGE, LLC; and BEELINE LOANS, INC.,<br><br>        **Defendants.** | Case No. 3:25-cv-01140<br><br>District Judge Waverly D. Crenshaw, Jr.<br><br>Magistrate Judge Jeffery S. Frensley |

**DEFENDANT BLACK KNIGHT, INC.'S MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## I.    Introduction

Plaintiffs allege that a dozen mortgage originators "conspired" to fix prices and exchange "confidential information" by subscribing to certain data services provided by Optimal Blue, LLC ("Optimal Blue"). However, Black Knight, Inc. ("Black Knight"), one of the named defendants in this matter, is not a mortgage originator, did not charge any of the prices Plaintiffs allege were fixed because that was not its business, did not exchange any "confidential

1

information" with any other defendant, and was not a provider of the data services products that Plaintiffs assert (wrongly) facilitated an antitrust violation. In fact, the *only* allegations concerning Black Knight found in the entirety of Plaintiff's First Amended Class Action Complaint, ECF No. 264 ("Amended Complaint"), are that it owned a majority (and ultimately, all) of Optimal Blue's equity during a three-year period from 2020 to 2023. That is not sufficient to state a claim against Black Knight.

A plaintiff in an antitrust conspiracy case must allege facts establishing a plausible basis to believe that *each defendant* entered into and participated in the alleged conspiracy. That is true even of defendants allegedly related to or that owned another defendant alleged also to have been a conspiracy participant: mere ownership is not enough. The "related" entity defendant must be alleged to have undertaken some conduct in furtherance of the conspiracy. Here, there are no allegations that Black Knight *took any actions* to join in or further the conspiracy Plaintiffs allege.[1]

Nor can Plaintiffs proceed with claims against Black Knight based on the theory that Black Knight *was*, effectively, Optimal Blue. Optimal Blue was at all times a separately incorporated entity, even during the period that its equity was entirely owned by Black Knight, and there are no facts alleged that would justify piercing Optimal Blue's corporate veil to provide a basis for holding Black Knight responsible for the actions of Optimal Blue.

There is no plausible factual basis alleged in the complaint for any claim against Black Knight, and thus Black Knight should be dismissed.

---

[1] Black Knight, with all other Defendants, is filing a Joint Motion to Dismiss Plaintiffs' First Amended Class Action Complaint and Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, which will address the sufficiency of Plaintiffs' allegations regarding the alleged antitrust conspiracy on behalf of all Defendants.

## II.     Relevant Allegations

Plaintiffs allege that Defendants conspired to fix mortgage rates and share "competitively sensitive" information in violation of the antitrust laws by subscribing to certain data analysis products provided by Optimal Blue.  *See* Amended Complaint ¶ 2–3.  Plaintiffs allege that Mortgage Originator Defendants[2] share "an unprecedented quantity and quality of non-public, competitively sensitive, granular, real-time data covering every component of their residential mortgage pricing and profit margins" through Optimal Blue products that compile and present it in a way that "enables benchmarking against competitors and adjusting of rates and margins in real time," allowing the Mortgage Originator Defendants to "coordinate to extract maximum profits from homebuyers."  *Id*. ¶ 4.

There are no allegations in the Amended Complaint that Black Knight was directly involved in the alleged conspiracy.  Black Knight is not alleged to be a Mortgage Originator (because it is not) and Plaintiffs further fail to allege that Black Knight subscribed to or used any of the Optimal Blue data products that Plaintiffs allege facilitated (and effectively comprised) the alleged conspiracy.  *See id*. ¶¶ 24–39, 70, 73, 76, 93, 100, 108.  Instead, Plaintiffs appear to include Black Knight as a Defendant solely due to its alleged ownership of a majority of the equity of Optimal Blue during a three-year period from 2020 to September 2023, in what appears to be an attempt to ascribe liability to Black Knight based on the alleged conduct and actions of Optimal Blue.  *See id*. ¶ 25.  However, as even Plaintiffs must acknowledge, Optimal Blue and Black Knight were separately incorporated entities during that time frame, and the Amended Complaint contains no non-conclusory allegations that Black Knight controlled Optimal Blue's

---

[2] While Plaintiffs refer to a set of Defendants as "Mortgage Lender Defendants" throughout the Amended Complaint, the products alleged to be at issue here are for the primary market, which encompasses loan originations. *See* Amended Complaint p. ii and ¶ 36.  It is thus more accurate to refer to this set of Defendants as "Mortgage Originator Defendants," as is done throughout this Memorandum of Law.

operations in a way that would permit this Court to pierce the corporate veil.  *See id*. ¶¶ 24–25. Instead, Plaintiffs only conclusorily assert that "[o]n information and belief, Black Knight controlled the operations of Optimal Blue, including executive compensation, and considered Optimal Blue and Black Knight to be 'one company'."  *See id*.  These allegations fall far short of what is required to allege that Black Knight can be liable for the alleged conduct of its separately incorporated subsidiary, Optimal Blue.

### III.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Twombly*, 550 U.S. at 555. "[A]llegations must be specific enough to establish the relevant 'who, what, where, when, how or why.'"  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) (quoting *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)).  The "allegations must 'specify how [*each*] defendant [was] involved in the alleged conspiracy.'"  *Carrier Corp.*, 673 F.3d at 445 (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009)) (emphasis added).  A complaint must contain either direct or inferential allegations with respect to all material elements of each claim.  *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 552, 555 (M.D. Tenn. 2023) (citing *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003)).

4

## IV. Legal Argument

### a. The Amended Complaint Fails to Plausibly Allege That Black Knight Participated in Any Unlawful Conspiracy

"To establish a violation of § 1 of the Sherman Act a plaintiff must demonstrate that there is: 1) an agreement, which may be in the form of a contract, combination, or conspiracy; 2) affecting interstate commerce; 3) that imposes an unreasonable restraint on trade." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022). Plaintiffs alleging a Section 1 violation must plead allegations specific enough to "establish the relevant 'who, what, where, when, how or why'" and additionally "must specify how [each] defendant [was] involved in the alleged conspiracy." *Carrier Corp.*, 673 F.3d at 445.

The Amended Complaint falls well short of these requirements as it pertains to Black Knight. The Amended Complaint contains no allegations of any conduct or actions in support of any conspiracy by Black Knight, let alone any allegations that Black Knight entered into any agreement—unreasonable or otherwise—with any other defendant, when it entered into such an agreement or what that agreement entailed. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905–06. Plaintiffs do not allege that Black Knight used the alleged Optimal Blue products at issue, set pricing as part of a conspiracy, exchanged any commercially sensitive information, or communicated with any of the Mortgage Originator Defendants. Indeed, there could be no such allegations. As the Amended Complaint makes clear, Black Knight *was not* a mortgage originator, offered no mortgage products whose prices could be fixed, and engaged in no exchange of "competitively sensitive" information. *See* Amended Complaint ¶¶ 2–4, 25.

These omissions are fatal to Plaintiffs' claims against Black Knight. Indeed, the Amended Complaint is even more defective than the allegations in *In re Travel Agent Commission Antitrust Litigation*, where the Sixth Circuit affirmed the dismissal of claims against

5

defendants that were improperly lumped into vague allegations referring generally to "defendants," as such allegations were "precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." 583 F.3d at 905. Here, Black Knight is not even lumped into the vast majority of the allegations of anticompetitive conduct, as those allegations are directed to Mortgage Originator Defendants, of which Black Knight is not a member. *See* Amended Complaint ¶ 24–39, 70, 73, 76, 93, 100, 108 (defining defendants and outlining key allegations). Because the Amended Complaint does not allege facts plausibly suggesting Black Knight participated in any conspiracy, the claims against Black Knight should be dismissed with prejudice.

### b. The Amended Complaint Fails to State a Claim Based on Black Knight's Prior Ownership of Optimal Blue

Perhaps recognizing that they cannot satisfy the requisite "who, what, where, when, how or why" of Black Knight's participation in the alleged conspiracy (*Carrier Corp.*, 673 F.3d at 445), Plaintiffs appear to instead assume that Black Knight may be liable solely as a result of its ownership of the equity of Optimal Blue for a three-year period. Plaintiffs are wrong.

### i. Ownership Alone Cannot Establish Liability

It is a general principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). "That principle is not altered in the antitrust context." *In re RealPage (No. II)*, 709 F. Supp. at 558. A parent corporation may only be held accountable for Sherman Act violations of its subsidiary if it participated in the conspiracy itself, beyond mere ownership of another entity. *See id*. at 555.

In *In re RealPage (No. II)*, plaintiffs brought claims under Section 1 of the Sherman Act alleging a parent company and its subsidiaries set artificially high housing prices as part of a conspiracy utilizing RealPage software. *See id*. at 555–56. The allegations against the parent

company did not involve any independent conduct in the conspiracy beyond mere ownership of the subsidiaries, and this Court dismissed those claims as a result. *See id.* at 555–58 ("Because [] Plaintiffs have not alleged any independent conduct in the conspiracy by [the parent company], their claims against [the parent company] must be dismissed."). Similarly, in *Cupp v. Alberto-Culver USA, Inc.*, the Western District of Tennessee dismissed Section 1 claims against two defendants that appeared to have been included in the complaint "only because of their corporate relationship to [another defendant]," because "mere existence of a corporate relationship [does not] implicate a parent in its subsidiary's actions." 310 F. Supp. 2d 963, 973–74 (W.D. Tenn. 2004). Because Plaintiffs fail to allege any conduct by Black Knight beyond mere ownership of Optimal Blue, these claims should likewise be dismissed.

### ii. Plaintiffs Fail to Plausibly Plead That the Corporate Veil Should Be Pierced

A parent company may only be held liable for the acts of a separately incorporated subsidiary if there are facts to support piercing the corporate veil. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007). "[I]n extraordinary cases, such as the corporate form being used for wrongful purposes, courts will pierce the corporate veil and disregard the corporate entity." *Id.* In such cases, "[t]he burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation." *Id.* Indeed, "[t]he principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity." *Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 675 (6th Cir. 2006).

Because Black Knight is incorporated in Delaware (Amended Complaint ¶ 25), Delaware state law provides the relevant test used for corporate veil piercing under the Tennessee "internal affairs" doctrine. *See Layne Christensen Co. v. City of Franklin, Tennessee*, 449 F. Supp. 3d

7

748, 756 (M.D. Tenn. 2020).  Delaware public policy disfavors piercing the corporate veil and courts do so only in exceptional circumstances.  *See Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at \*4 (Del. Ch. Sept. 5, 2023).  Delaware courts first look to several factors, with no single factor being determinative, including:

> (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.

*Id.* at \*5*; see also Prime Hosp. Corp.*, 462 F.3d at 675.

The Amended Complaint is devoid of any factual allegations that would support any of these factors.  Instead, Plaintiffs merely assert that "Black Knight controlled the operations of Optimal Blue, including executive compensation, and considered Optimal Blue and Black Knight to be 'one company.'"  Amended Complaint ¶ 25.  This lone allegation of purported "control" falls far short of what is necessary under Delaware law to pierce the corporate veil.  Moreover, the sources Plaintiffs cite to support their allegations of "control" do not establish the necessary indicia of control either.  Plaintiffs cite to a Proxy Statement[3] and a Conference Transcript[4] in the Amended Complaint, but neither source is helpful to them.  In fact, the Conference Transcript suggests that Black Knight and Optimal Blue operated separately.  *See* Conference Transcript ("It's one company. But we have different sales forces and so they can help each other out.").  The Proxy Statement merely outlines Black Knight's ownership interest

---

[3] Amended Compl. ¶ 25, n.16, Black Knight, Inc., Proxy Statement (Schedule 14A) (April 28, 2022) ("Proxy Statement").

[4] Amended Compl. ¶ 25, n.16, Black Knight Inc., Transcript of Presents at Stephens Annual Investment Conference (Nov. 19, 2020) https://www.bamsec.com/transcripts/6377778d-1f51-440e-9fa7-4dfbf4249abf?hl_id=41b1pwwmgg ("Conference Transcript").

in Optimal Blue.  *See* Proxy Statement.  Nothing in the Amended Complaint suggests the level of control necessary to pierce the corporate veil, such as inadequate capitalization, solvency issues, etc.

Additionally, Delaware law requires allegations of fraud or something similar to pierce the corporate veil.  *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989); *see also LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 295 (D.Del.2000) ("In order to prevail on a claim to pierce the corporate veil . . . a plaintiff must prove that the corporate form causes fraud or similar injustice.").  Delaware law requires that this fraud or injustice must be in the use of the corporate form.  *See In re Foxmeyer Corp.*, 290 B.R. 229, 236 (D.Del.2003); *see also Mobil Oil Corp.*, 718 F. Supp. at 268–69 ("The law requires that fraud or injustice be found in the defendants' use of the corporate form.").  The Sixth Circuit, applying Delaware law, has upheld dismissal of veil piercing attempts, even where a plaintiff established a parent company's dominion/control over a subsidiary, where allegations did not show this requisite fraud.  In *Prime Hospitality Corp.*, plaintiffs alleged that the parent company failed to adequately capitalize a subsidiary and used its control of a subsidiary to cause the subsidiary's officers and directors to violate their duties of loyalty, constituting the needed fraud.  *See* 462 F.3d at 678. The Sixth Circuit disagreed, stating that such "conclusory allegations . . . are not tantamount to the fraud or injustice required to pierce the corporate veil" and the pleadings did not indicate that the parent company misused the corporate form "to sanction a fraud, injustice, or equivalent misfeasance." *Id*.

The Amended Complaint here similarly lacks any allegations to suggest that Black Knight engaged in any fraud or similar conduct regarding the corporate form of Optimal Blue. Accordingly, the Amended Complaint fails to allege any of the exceptional circumstances

9

required to pierce the corporate veil and Black Knight cannot be held liable for the conduct of Optimal Blue, a separately incorporated entity.  The claims against Black Knight should be dismissed.

## V.      Conclusion

For the foregoing reasons, Black Knight respectfully requests that the Court dismiss all of Plaintiffs' claims against it with prejudice.

Dated: April 30, 2026

Respectfully submitted,

*/s/ J. Clayton Everett, Jr.*
J. Clayton Everett, Jr. (Admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
(202) 739-5860
clay.everett@morganlewis.com

Michelle Park Chiu (Admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
600 Montgomery Street, Suite 2300
San Francisco, CA 94111-2725
(415) 442-1184
michelle.chiu@morganlewis.com

*/s/ Andrew J. Pulliam*
Andrew J. Pulliam (TN Bar No. 016863)
**BRICKER GRAYDON WYATT, LLP**
333 Commerce Street, Suite 830
Nashville, TN 37201-1826
(615) 251-6675
apulliam@bricker.com

*Counsel for Defendant Black Knight, Inc.*

10

## CERTIFICATE OF SERVICE

I, Andrew J. Pulliam, hereby certify that on April 30, 2026, I caused the foregoing Memorandum in Support of Black Knight's 12(b)(6) Motion to Dismiss for Failure to State a Claim to be electronically filed using the CM/ECF system, which will serve the foregoing Memorandum upon all counsel of record via electronic mail.

*/s/ Andrew J. Pulliam*
Andrew J. Pulliam

11