# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

SETH OGILVIE and NANCI DONACKI-THOMPSON, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiffs,

     v .

OPTIMAL BLUE, LLC; BLACK KNIGHT, INC.; CONSTELLATION SOFTWARE, INC.; GUARANTEED RATE, INC.; CROSSCOUNTRY MORTGAGE, LLC; PENNYMAC LOAN SERVICES, LLC; GUILD MORTGAGE COMPANY, LLC; NEW AMERICAN FUNDING, LLC; CHURCHILL MORTGAGE CORPORATION; FIRST COMMUNITY MORTGAGE, INC; MOVEMENT MORTGAGE, LLC; AND BEELINE LOANS, INC.

                    Defendants.

Case No. 3:25-cv-01140

JURY TRIAL DEMAND

District Judge Waverly D. Crenshaw, Jr.

Magistrate Judge Jeffery S. Frensley

**PLAINTIFFS' OPPOSITION TO DEFENDANT CONSTELLATION SOFTWARE, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION <u>COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

    I.      FEDERAL RULE OF CIVIL PROCEDURE RULE 4(K) AUTHORIZES PERSONAL JURISDICTION OVER CSI IN THE ACTION .............................. 1

          A.     Legal Standard ...................................................................................... 1

          B.     The Court Has Jurisdiction Over CSI Pursuant to Rule 4(k)(2) ................. 2

                 1.     Rule 4(k)(2) Authorizes Broad Jurisdiction Over Foreign Defendant ................................................................................... 2

                 2.     The Rule 4(k) Requirements are Met Here ..................................... 3

    II.     VENUE IS PROPER IN THIS DISTRICT ............................................................. 8

    III.    ALTERNATIVELY, JURISDICTIONAL DISCOVERY AND AN OPPORTUNITY TO AMEND IS APPROPRIATE ........................................... 10

CONCLUSION ............................................................................................................. 10

**Page(s)**

**Case**

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
503 F.3d 544 (6th Cir. 2007) ..............................................................................................1, 2

*Anwar v. Dow Chem. Co.*,
876 F.3d 841 (6th Cir. 2017) ...................................................................................................7

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ....................................................................................................7

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*,
406 U.S. 706 (1972)................................................................................................................8, 9

*Carrier Corp. v. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012) ...................................................................................................3

*Deluca v. LG Chem Am., Inc.*,
2022 WL 892916 (E.D. Mich. Mar. 25, 2022) .......................................................................10

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025)........................................................................................... *passim*

*Go-Video, Inc. v. Akai Elec. Co.*,
885 F. 2d 1406 (9th Cir. 1989) ................................................................................................9

*Hall v. Trivest Partners, L.P.*, 2026 WL 1733558 (6th Cir. June 16, 2026) ..................................4

*In re Auto. Parts Antitrust Litig.*,
2019 WL 11005450 (E.D. Mich. Mar. 7, 2019) .....................................................................8

*Lyngaas v. Curaden AG*,
992 F.3d 412 (6th Cir. 2021) .............................................................................. *passim*

*Omni Cap. Int'l v. Rudolf Wolff & Co., Ltd.*,
484 U.S. 97 (1987)..............................................................................................................2, 7

*Pritchard v. Thompson*,
2023 WL 5817658 (W.D. Tenn. Aug. 3, 2023)........................................................................8

*Ross v. Robinson, Hoover & Fudge, PLLC*,
173 F.4th 745 (6th Cir. 2026) ..................................................................................................1

Case 3:25-cv-01140    Document 288    Filed 06/18/26    Page 3 of 17 PageID #: 1729

*Sophia Parker Studios, Inc. v. Temperley*,
  2025 WL 3280329 (N.D. Ohio Nov. 25, 2025) ........................................................7

*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir. 1991) ..............................................................................2

*United States v. Topco Assocs., Inc.*,
  405 U.S. 596 (1972) ..............................................................................................6

*Weng v. Hana Japanese Steakhouse, Inc.*,
  2020 WL 12894127 (E.D. Tenn. Dec. 21, 2020) ...................................................7

**Statutes**

15 U.S.C. § 22 ......................................................................................................3, 9

28 U.S.C. § 1391 .............................................................................................. *passim*

28 U.S.C. §§ 2072(a) ..............................................................................................2

28 U.S.C. §§ 2074(a) ..............................................................................................2

**Other Authorities**

FED. R. CIV. P. 4 ..................................................................................................2, 3

FED. R. CIV. P. 15 ..................................................................................................10

**INTRODUCTION**

The Court has personal jurisdiction over defendant Constellation Software, Inc. ("CSI"). Service of the complaint alleging violations of the federal antitrust laws against a Canadian defendant was effective to establish personal jurisdiction under FED. R. CIV. P. 4(k)(2) and the Due Process Clause of the Fifth Amendment because of CSI's contacts with the United States. Venue is also proper in this District over CSI under 28 U.S.C. § 1391(c)(3)—the Alien Venue Rule— which provides that "a defendant not resident in the United States may be sued *in any judicial district*." (emphasis added).

CSI ignores controlling authority in the Sixth Circuit, *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021), which sets forth the requirements for establishing personal jurisdiction under Rule 4(k)(2) and the Fifth Amendment. Regarding venue, CSI similarly ignores U.S. Supreme Court authority on the federal venue statute applicable to alien entities, the Alien Venue Rule, and instead suggests that this Court must look to the Clayton Act's venue provisions. This is not correct. The Alien Venue Rule applies here. CSI's motion should be denied in full.

**ARGUMENT**

I. <u>**FEDERAL RULE OF CIVIL PROCEDURE RULE 4(K) AUTHORIZES PERSONAL JURISDICTION OVER CSI IN THE ACTION**</u>

    A.     **Legal Standard**

On a motion to dismiss, Plaintiffs have only a "relatively slight" burden of establishing that a district court can exercise jurisdiction over the defendant where the court rules based on written submissions and affidavits rather than conducting an evidentiary hearing. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). To defeat dismissal, plaintiffs need make only a *prima facie* showing that personal jurisdiction exists, *id.*, either "through the complaint alone," or "through supplementary affidavits." *Ross v. Robinson, Hoover & Fudge,*

1

*PLLC*, 173 F.4th 745, 751-52 (6th Cir. 2026). The court must view the pleadings and any affidavits in the light most favorable to the plaintiff and "should not weigh the controverting assertions of the party seeking dismissal." *Air Prods.*, 503 F.3d at 549. The allegations in the complaint here, coupled with the jurisdictional facts in the Declaration of Robin A. van der Meulen ("vdM Dec."), easily clear this threshold.[1]

      **B.**      **The Court Has Jurisdiction Over CSI Pursuant to Rule 4(k)(2)**

      **1.**      Rule 4(k)(2) Authorizes Broad Jurisdiction Over Foreign Defendant

Personal jurisdiction over CSI in this Court is appropriate under Rule 4(k)(2). Rule 4(k)(2) was adopted in response to *Omni Cap. Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987), in which third-party defendants to a federal claim escaped federal jurisdiction because they fell outside the personal jurisdiction of any single state. *See id.* at 104-11. The Supreme Court suggested that a new statute or rule might patch this gap in the law. *Id.* at 111. In 1993, Rule 4(k)(2) did so. *See* FED. R. CIV. P. 4(k)(2) advisory committee note (1993).

Rule 4(k)(2) reflects a judgment by Congress—which authorized the rule's promulgation after congressional review, *see* 28 U.S.C. §§ 2072(a), 2074(a)—that the full vindication of federal rights requires the broadest jurisdiction over foreign defendants not otherwise amenable to American courts. It patches the *Omni Capital* gap by providing a forum for federal claims against otherwise-unreachable defendants whenever such jurisdiction is "consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2)(B). Because the basis for jurisdiction is a federal statute, Rule 4(k)(2) invokes review under the Due Process Clause of the Fifth Amendment—not

---

[1]     The Sixth Circuit has held that, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

the Fourteenth Amendment test—and requires only that jurisdiction not contravene the "United States Constitution and laws."

In *Lyngaas v. Curaden AG*, the Sixth Circuit considered the application of Rule 4(k)(2) against a foreign parent corporation, and found that the Rule conferred jurisdiction because the three requisite factors were met: (1) the cause of action arose under federal law; (2) the defendant was not subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction comported with due process. 992 F.3d 412, 422 (6th Cir. 2021). These requirements are also met here.

### 2. The Rule 4(k) Requirements are Met Here

The first two factors set out in *Curaden* are met because this case involves claims under the federal antitrust laws[2] against a foreign defendant that "is not subject to jurisdiction in any state's courts of general jurisdiction," FED. R. CIV. P. 4(k)(2)(A).[3]

Regarding the third factor, the Sixth Circuit in *Curaden* found that, "[b]ecause this is a federal-question case in federal court, the due process requirements emanate from the Fifth rather than the Fourteenth Amendment . . . [b]ut they 'are the same as with any other personal jurisdiction inquiry, i.e. relatedness, purposeful availment [or, 'minimum contacts'], and reasonableness, only

---

[2]    The Clayton Act authorizes service of process *nationwide*, which courts have interpreted to confer personal jurisdiction over a defendant who has sufficient minimum contacts with the United States as a whole, rather than merely the forum state. *See* 15 U.S.C. § 22 ("all process in such cases may be served in the district of which it is an inhabitant, *or wherever it may be found*."); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) ("[The Clayton Act] authorizes service of process over an antitrust defendant 'wherever it may be found.' When Congress has enacted such nationwide service of process statutes, personal jurisdiction exists whenever the defendant has 'sufficient minimum contacts with the *United States*' to satisfy the due process requirements under the Fifth Amendment.").

[3]    CSI concedes that it is not subject to any states' general jurisdiction, stating that it "maintains its principal place of business in Toronto, Ontario," and that it "is not registered or licensed to do business in the United States and has no corporate officers, property, or bank accounts in the United States." CSI Br. at 1-2.

3

in reference to the United States as a whole, rather than a particular state.'" 992 F.3d at 422. However, the Supreme Court in *Fuld v. Palestine Liberation Organization* recently rejected extending the Fourteenth Amendment's minimum contacts standard to the Fifth Amendment, instead upholding "a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority" based on contacts with the United States as a whole. *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025); *see also id.* ("[W]e decline to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment.").[4] Although the Supreme Court did not articulate the exact contours of the due process inquiry under the Fifth Amendment, it held that the exercise of jurisdiction was proper where the defendant and the conduct at issue bore a "meaningful relationship to the United States." *Id.* at 22-23. And while the Supreme Court held that the Fifth Amendment does not import the minimum-contacts standard wholesale, it found that breadth of asserted jurisdiction and the extent of a defendant's contacts with the United States may still be relevant to the constitutionality of asserting jurisdiction in a particular case, as well as "the reasonableness of the assertion of jurisdiction in the particular case." *Id.* at 23.

Here, CSI is subject to personal jurisdiction even under the more demanding requirements set forth by the Sixth Circuit in *Curaden*. Accordingly, Plaintiffs follow that analysis here: (1) CSI has purposefully availed itself of the U.S. market, meeting any minimum contacts test; (2) those

---

[4]     *See also Hall v. Trivest Partners, L.P.*, 2026 WL 1733558 at *3 (6th Cir. June 16, 2026) (Citing *Fuld*, the Sixth Circuit recognized that, "for actions arising with the United States, the Supreme Court has not identified any limits, under the Fifth Amendment, on the personal jurisdiction of the federal courts.").

4

contacts are related to this case; and (3) the exercise of jurisdiction is reasonable. *See Curaden*, 992 F.3d at 422.[5]

***Purposeful Availment.*** Like the defendant in *Curaden*, CSI "made a deliberate decision to target and exploit American markets, thus showing purposeful availment." *Id.* CSI reports that the U.S. is one of the principal geographic areas in which it operates. vdM Dec. ¶ 7. CSI, through its U.S. arm CSI USA Inc., runs a significant business in the United States, approving all significant acquisitions and setting investment return objectives. vdM Dec. ¶¶ 2-3. Approximately 45% of CSI's consolidated revenue was transacted in the U.S. in fiscal years 2023 and 2024—CSI's single largest market. *Id.* at ¶ 5. Although CSI states that it "does not pay taxes in the United States," Dkt. 281-1, Dennison Dec. ¶ 11, CSI's 2025 annual information form states that it is subject to "income taxes as well as non-income-based taxes, in Canada, the United States, and various foreign jurisdictions." vdM Dec. ¶ 4.

CSI argues that Optimal Blue's contacts cannot be attributed to it under an alter ego theory. CSI Br. at 6-9. This is a red herring, as Plaintiffs do not allege that an alter ego theory subjects CSI to personal jurisdiction. Instead, it is CSI's own conduct that confers personal jurisdiction. CSI's entire business model is acquiring software companies with a "leading or increasing market share" and investing in them—like Optimal Blue. vdM Dec. ¶ 8. Indeed, CSI's own website touts that it "acquires high-quality vertical market software companies and ***operates them indefinitely***" and that it "strengthen[s] performance through shared resources and disciplined capital allocation." *Id.* at ¶ 9 (emphasis added). CSI's efforts in its brief to distance itself from Optimal Blue should be

---

[5]     Because Plaintiffs make the requisite showing that the traditional Fourteenth Amendment principles outlined by the Sixth Circuit in *Curaden* are met here, Plaintiffs more than meet the "more flexible" standard under the Fifth Amendment set out in *Fuld*.

5

rejected. CSI's precise business is acquiring software companies to operate and grow them, including in the United States.

*Relatedness.* CSI's contacts with the U.S. are related to facts of this case—and the standard for meeting that requirement is "lenient." *Curaden*, 992 F.3d at 423. CSI acquired Optimal Blue, a U.S. entity, in 2023 during the alleged conspiracy period, and its own declaration concedes that CSI is Optimal Blue's ultimate parent company. Dkt. 264, First Am. Class Action Compl. ¶ 26; Dennison Dec. ¶ 16. Indeed, CSI "has guaranteed payment obligations" as part of the Optimal Blue purchase agreement. vdM Dec. ¶ 11. In CSI's business model, the "[c]orporate head office approves all significant acquisitions," and "sets investment return objectives." *Id.* at ¶ 3.

*Reasonableness.* Both the Supreme Court in *Fuld* and the Sixth Circuit considered the "reasonableness" of the exercise of jurisdiction, including "the interests of the forum," and "the burden on the defendant." *Fuld*, 606 U.S. at 24; *see also Curaden*, 992 F.3d at 423 ("The final consideration is whether the exercise of jurisdiction . . . would be reasonable, such that it would comport with traditional notions of fair play and substantial justice."). This factor weighs in favor of Plaintiffs here. The United States, including this Court, has a clear interest in adjudicating such anticompetitive conduct occurring within its borders and affecting U.S. commerce and consumers, and thus personal jurisdiction over CSI here is proper. *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) ("Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms."); *see also Curaden*, 992 F.3d at 423 ("the United States has an interest in enforcing federal laws.").

Litigating this case in this District also would not force CSI to bear an "unfair or unmanageable burden" so "as to render the exercise of personal jurisdiction unreasonable and unfair." *Fuld*, 606 U.S. at 24-25. CSI is a sophisticated international organization with global revenue exceeding CAD $11.6 billion, providing ample litigation funds. vdM Dec. ¶ 6; *see also Fuld*, 606 U.S. at 24-25 (exercising jurisdiction over an international organization was reasonable because it operated "billion-dollar budgets," had "a longstanding presence in the United States," and had "litigated [] suits here for decades."). And again, approximately 45% of CSI's consolidated revenue was transacted in the United States in fiscal years 2023 and 2024. vdM Dec. ¶ 5. These facts support a finding that exercising jurisdiction over CSI is reasonable. *See, e.g., Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021) (finding purposeful availment under Rule 4(k)(2) when, among other contacts, "[n]early ten percent of [defendant's] products are sold in and shipped to the United States"); *Sophia Parker Studios, Inc. v. Temperley*, 2025 WL 3280329, at *15 (N.D. Ohio Nov. 25, 2025) (holding that a foreign defendant's "significant sales in the United States, plus their additional connections to the United States, are sufficient to establish personal availment" under Rule 4(k)(2), where the U.S. accounted for 16% of net sales).[6]

CSI ignores any analysis under the Fifth Amendment and Rule 4(k)(2). It also does not cite *Curaden, Omni*, or *Fuld*. Instead, CSI leans on inapposite cases relating to general personal jurisdiction (which Plaintiffs do not claim), and an irrelevant long-arm analysis that evaluates only CSI's contacts with this District. CSI does not acknowledge that the Court's analysis is not limited to its contacts with Tennessee or with the laws of Tennessee. Instead, the personal jurisdiction

---

[6]     Defendants cite *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850 (6th Cir. 2017), but that case did not analyze personal jurisdiction under Rule 4(k)(2) and predates the Supreme Court's decision in *Fuld*. Accordingly, it is not applicable here.

analysis concerns CSI's contacts with the United States and actions that implicate (and allegedly violate) federal law.

CSI has significant and related business ties to the United States. The United States has an interest in enforcing its federal antitrust laws. Accordingly, CSI should be subject to the jurisdiction of this Court under Rule 4(k)(2), Supreme Court, and Sixth Circuit law.

## II.      <u>**VENUE IS PROPER IN THIS DISTRICT**</u>

For a motion to dismiss on venue, the "moving party bears the burden of establishing that the current forum is unnecessarily burdensome." *Weng v. Hana Japanese Steakhouse, Inc.*, 2020 WL 12894127, at *2 (E.D. Tenn. Dec. 21, 2020). "Substantial weight" is given to Plaintiffs' choice of forum. *Id.* Accordingly, the burden here is on CSI to prove that venue is inappropriate, which it has not done.

Here, venue is appropriate in this forum as to CSI under 28 U.S.C. § 1391(c)(3), the Alien Venue Rule, which provides that "a defendant not resident in the United States may be sued in any judicial district." *See, e.g.*, *Pritchard v. Thompson*, 2023 WL 5817658, at *6 (W.D. Tenn. Aug. 3, 2023), report and recommendation adopted, 2023 WL 5746922 (W.D. Tenn. Sept. 6, 2023) (stating that "[l]awsuits against foreign entities are 'wholly outside the operation of all the federal venue laws, general and special'") (quoting *Pure Oil v. Suarez*, 384 U.S. 202, 205 (1966)); *In re Auto. Parts Antitrust Litig.*, 2019 WL 11005450, at *2 (E.D. Mich. Mar. 7, 2019) (applying 28 U.S.C. § 1391(c)(3) to a Japanese defendant). As noted above, CSI—a Canadian entity—is not a resident in the United States and accordingly may be sued in any district including this one.

CSI urges this Court to look only to the venue provision in the Clayton Act. This approach would ignore the federal venue statute applicable to alien entities, like CSI. However, it is well settled that the Court may look to 28 U.S.C. § 1391(c)(3) rather than the Clayton Act's specific venue provision for alien entities, *i.e.*, companies that are incorporated outside of the United States.

8

The Supreme Court, in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 713-14 (1972), held that a specific venue provision concerning actions for patent infringement did not bar a suit where venue had been satisfied under § 1391(d).[7] Indeed, the Supreme Court concluded that "in 1391(d) Congress was stating a principle of broad and overriding application, and not merely making an adjustment in the general venue statute," and therefore "1391(d) cannot be confined in its application to cases that would otherwise fall under the general venue statutes" because "§ 1391 is properly regarded, not as a venue restriction at all, but rather a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *Id.* at 714.

The Ninth Circuit, in *Go-Video, Inc. v. Akai Elec. Co.*, 885 F. 2d 1406 (9th Cir. 1989), applied the Supreme Court's holding to the Clayton Act, holding "that process may be served on an antitrust defendant pursuant to 15 U.S.C. § 22 in cases where venue is not established under that section but lies properly under 28 U.S.C. § 1391(d)." *Id.* at 1413. The Ninth Circuit elaborated that "allowing the allegedly injured party a greater range of potential places in which to bring suit is without question 'basically consistent with the purposes and language' of the Clayton Act." *Id.* (quoting *Pure Oil*, 384 U.S. at 205). The Ninth Circuit also rightly refused to ignore the general venue statute because doing so "would allow alien corporations to use a statute [the Clayton Act] which was designed to give injured parties a *greater* ability to sue for antitrust injuries as the instrument which denies plaintiffs a forum in which to sue, or the ability to serve process on those alleged to have injured them." *Go-Video*, 885 F. 2d at 1413. The Court should do the same here.[8]

---

[7]    28 U.S.C. § 1391(d), which provided that "an alien may be sued in any district," is the predecessor to 28 U.S.C. § 1391(c)(3), which was amended in 2011.

[8]    There is a federal circuit split on whether plaintiffs that rely on the Clayton Act for personal jurisdiction can then look to the federal venue statute to establish venue or whether they must also rely on the Clayton Act's venue provisions. But that analysis, which the Sixth Circuit has not yet

**III.   ALTERNATIVELY, JURISDICTIONAL DISCOVERY AND AN OPPORTUNITY TO AMEND IS APPROPRIATE**

Plaintiffs respectfully submit that they have made a *prima facie* showing that this District has personal jurisdiction over CSI. In the event that the Court disagrees, Plaintiffs respectfully request leave to conduct jurisdictional discovery relating to CSI's contacts with the United States and operation of Optimal Blue to support what Plaintiffs have already discovered through public sources and to amend their complaint with relevant new information. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Jurisdictional discovery is appropriate if a plaintiff establishes a colorable showing of personal jurisdiction after drawing inferences in the plaintiff's favor. *DeLuca v. LG Chem Am., Inc.*, 2022 WL 892916, at *1 (E.D. Mich. Mar. 25, 2022) (ordering jurisdictional discovery and reasoning that "[j]urisdictional discovery may be ordered when there is 'a reasonable basis to expect that further discovery would reveal contacts sufficient to support personal jurisdiction.'") (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully urge the Court to deny CSI's motion. In the alternative, Plaintiffs request leave to conduct jurisdictional discovery and to amend the complaint.

---

weighed in on, is inapplicable to alien defendants per the Supreme Court's ruling in *Brunette*. CSI ignores this distinction. Even if that analysis were relevant here, in *Hospital Authority of Metropolitan Government of Nashville*, 244 F. Supp. 3d 705, 711 (M.D. Tenn. 2017), this Court "follow[ed] the lead of other federal circuits that have concluded that the Clayton Act's grant of nationwide jurisdiction in antitrust cases, 15 U.S.C. § 22 ('Section 12'), may be read in concert with the general civil venue statute's provision establishing that a corporate defendant is considered to 'reside' in any district in which it is subject to personal jurisdiction, 28 U.S.C. § 1391(c)(2)." CSI does not reference this opinion.

Dated: June 18, 2026

Respectfully Submitted,

*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD, SUETHOLZ, GASTEL,**
**LENISKI AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

Robin A. van der Meulen (*Admitted Pro Hac Vice*)
Michelle Conston (*Admitted Pro Hac Vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6443
rvandermeulen@scott-scott.com
mconston@scott-scott.com

Patrick J. Coughlin (*Admitted Pro Hac Vice*)
Carmen A. Medici (*Admitted Pro Hac Vice*)
Jimmy S. McBirney (*Admitted Pro Hac Vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
jmcbirney@scott-scott.com

Patrick McGahan (*Admitted Pro Hac Vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street, P.O. Box 192
Colchester, CT 06145
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
pmcgahan@scott-scott.com

11

Brian D. Clark (*Admitted Pro Hac Vice*)
Arielle S. Wagner (*Admitted Pro Hac Vice*)
Olivia T. Levinson (*Admitted Pro Hac Vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
aswagner@locklaw.com
otlevinson@locklaw.com

Kyle Pozan (*Admitted Pro Hac Vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 North Clark Street, Suite 700
Chicago, IL 60610
Telephone: (312) 205-8968
kjpozan@locklaw.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was filed on June 18, 2026, via the CM/ECF system, which will be served to all counsel of record on the case.

/s/ Tricia R. Herzfeld
Tricia R. Herzfeld (#26014)

13