|  |  |
|---|---|
| SETH OGILVIE and NANCI DONACKI-THOMPSON, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>OPTIMAL BLUE, LLC; BLACK KNIGHT, INC.; CONSTELLATION SOFTWARE, INC.; GUARANTEED RATE, INC.; CROSSCOUNTRY MORTGAGE, LLC; PENNYMAC LOAN SERVICES, LLC; GUILD MORTGAGE COMPANY, LLC; NEW AMERICAN FUNDING, LLC; CHURCHILL MORTGAGE CORPORATION; FIRST COMMUNITY MORTGAGE, INC; MOVEMENT MORTGAGE, LLC; AND BEELINE LOANS, INC.<br><br>          Defendants. | Case No. 3:25-cv-01140<br><br>JURY DEMAND<br><br>District Judge Waverly D. Crenshaw, Jr.<br><br>Magistrate Judge Jeffery S. Frensley |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Do Not Plead a *Per Se* Illegal Pricing-Fixing Agreement. ................................ 2

 A. This is not an algorithmic price-fixing case............................................................. 2

 B. Plaintiffs plead no horizontal agreement or "rim.".................................................. 3

 C. Plaintiffs do not allege parallel conduct.................................................................. 5

 D. Plaintiffs' alleged "plus factors" do not raise a plausible inference of unlawful agreement....................................................................................................... 6

 E. The rule of reason applies. ........................................................................................ 8

II. Plaintiffs' Rule-of-Reason/Information-Exchange Theory Fails........................................ 8

 A. Plaintiffs fail to allege that Defendants exchanged sensitive information.............. 8

 B. Plaintiffs fail to allege anticompetitive effects or market power. ........................... 9

III. Plaintiffs' Group Pleading Is Impermissible...................................................................... 10

IV. Conclusion. ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Column & Lumber Co. v. United States*,
257 U.S. 377 (1921)...................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................5

*Cornish-Adebiyi v. Caesars Ent., Inc.*,
No. 1:23-cv-02536, 2024 WL 4356188 (D.N.J. Sept. 30, 2024)......................................3, 5, 6

*Duffy v. Yardi Sys., Inc.*,
758 F. Supp. 3d 1283 (W.D. Wash. 2024)...............................................................2, 3

*Gibson v. Cendyn Group, LLC*,
148 F.4th 1069 (9th Cir. 2025), *cert. denied*, No. 25-1109, 2026 WL 1052046 (U.S.
Apr. 20, 2026).........................................................................................................3

*In re MultiPlan Health Ins. Provider Litig.*,
789 F. Supp. 3d 614 (N.D. Ill. 2025) .....................................................................2, 3

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
767 F. Supp. 3d 681 (N.D. Ohio 2025)........................................................................7

*In re Pork Antitrust Litig.*,
No. 18-1776, 2019 WL 3752497 (D. Minn. Aug. 8, 2019)...........................................9

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
709 F. Supp. 3d 478 (M.D. Tenn. 2023)........................................................... *passim*

*Interstate Circuit, Inc. v. United States*,
306 U.S. 208 (1939)...................................................................................................4

*Maple Flooring Mfrs.' Ass'n v. United States*,
268 U.S. 563 (1925)...................................................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*,
No. 19 C 8318, 2020 WL 6134982 (N.D. Ill. Oct. 19, 2020)......................................9

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*,
373 F.3d 57 (1st Cir. 2004)........................................................................................2

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)........................................................................................8

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ....................................................................................10

*United States v. Masonite Corp.*,
316 U.S. 265 (1942)....................................................................................................4

Case 3:25-cv-01140   Document 294   Filed 07/16/26   Page 3 of 19 PageID #: 2426

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978)...............................................................................................................7

Case 3:25-cv-01140     Document 294     Filed 07/16/26     Page 4 of 19 PageID #: 2427

The FAC does not plead a plausible violation of Section 1 of the Sherman Act, and Plaintiffs' Response does nothing to change that. Optimal Blue ("OB") does not make pricing recommendations. After mortgage lenders lock loans, OB provides data on those locked loans to its subscribers, who decide what to do with that data. That is not an agreement. That is where this case should end.

Plaintiffs' *per se* price-fixing theory fails because the FAC alleges no price recommendations, no delegation of pricing authority, no agreement on how to use OB's benchmarking data, no adherence or enforcement mechanism, no parallel change in pricing strategy, and no horizontal "rim." Those omissions are fatal.

Plaintiffs' rule-of-reason theory fares no better. An antitrust information-exchange claim requires that the alleged exchange involve information sufficiently specific, identifiable, and competitively sensitive to facilitate coordination. Contrary to Plaintiffs' conclusory allegations, the OB Products show only anonymized and aggregated information from locked loans specific to a borrower for a unique property—they do not identify who the other lenders are. None of the OB Products provides insight into an individual competitor's prices. And in an industry where prices change daily, distributing aggregated and anonymized information makes the market more competitive, not less. Exchanging information that, by design, cannot allow competitors to align on prices does not violate Section 1. Moreover, Plaintiffs have failed to plausibly allege that Defendants collectively possess a large share of any relevant market or exercised market power through use of the OB Products, which independently defeats their rule-of-reason claim.

Finally, Plaintiffs' improper group pleading provides an independent ground for dismissal. Plaintiffs lump together nine defendants and five products without alleging who used what, when, or how. That does not provide fair notice to each Defendant of the nature of the claims against it

1

or the nature of its supposed participation in the alleged conspiracy.

## I.  Plaintiffs Do Not Plead a *Per Se* Illegal Pricing-Fixing Agreement.

### A.  This is not an algorithmic price-fixing case.

Plaintiffs do not allege a plausible *per se* price-fixing claim.[1] The only algorithmic-pricing cases allowing *per se* treatment involved allegations that the challenged software generated pricing recommendations or that pricing authority was delegated to the alleged hub. *See In re MultiPlan Health Ins. Provider Litig.*, 789 F. Supp. 3d 614, 636–44 (N.D. Ill. 2025) (competing payors allegedly delegated out-of-network reimbursement calculations to MultiPlan and adopted those rates as mandate-like prices); *Duffy v. Yardi Sys., Inc.*, 758 F. Supp. 3d 1283, 1294–97 (W.D. Wash. 2024) (competing landlords allegedly implemented Yardi's rent recommendations). Here, the FAC does not allege that any OB Product recommends prices or that any Originator Defendant delegated pricing authority to OB.

In *RealPage*, this Court found that the plaintiffs failed to allege a *per se* violation precisely because they did not allege "absolute delegation of [defendants'] price-setting to RealPage." 709 F. Supp. 3d at 519–21. The same is true here. The FAC does not allege the Originator Defendants delegated price-setting to OB. But the FAC also lacks the type of allegations that survived dismissal in *RealPage*. There, (1) the software generated specific daily price recommendations, *RealPage*, Dkt. No. 530 ¶¶ 2, 4, 14–18 (M.D. Tenn. Sept. 7, 2023); (2) defendants followed those recommendations 80–90% of the time, *id*. ¶¶ 15, 271–73; and (3) the alleged "hub" enforced compliance through "Pricing Advisors," "Lease Compliance Reports," "Rate Acceptance

---

[1] Plaintiffs argue the Court must wait for discovery. *See* Resp. at 32 n.4. But courts may decide at the pleading stage whether alleged facts state a *per se* or quick-look theory. *See Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield,* 373 F.3d 57, 61 (1st Cir. 2004); *see also In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 518–21 (M.D. Tenn. 2023).

2

Reports," and "Performance to Market" meetings, *id*. ¶¶ 16–18, 237–78. Here, the OB Products supply market data—not pricing recommendations—and the FAC alleges no adherence rates, compliance monitoring, or enforcement mechanism.

That is a central difference between this case and Plaintiffs' authorities—in *RealPage*, *Yardi*, and *MultiPlan*, plaintiffs alleged that a technological hub effectively made pricing decisions for competing companies. Here, Plaintiffs allege only that OB Products provide different sets of anonymized or aggregated market information to a broad group of users, each of which makes its own decisions on how or whether to use that information. Preserving independent decision-making is not an agreement.

This case is more analogous to *Gibson* and *Cornish-Adebiyi*, where courts dismissed Section 1 claims because use of the same vendor—without a horizontal agreement—is insufficient to state a claim. *See Gibson v. Cendyn Group, LLC*, 148 F.4th 1069, 1082–83 (9th Cir. 2025), *cert. denied*, 2026 WL 1052046 (U.S. Apr. 20, 2026); *Cornish-Adebiyi v. Caesars Ent., Inc.*, 2024 WL 4356188, at *7 (D.N.J. Sept. 30, 2024). As the Ninth Circuit explained in *Gibson*:

> [O]btaining information from the same source does not reduce the incentive to compete…While antitrust law restricts *agreements* between competitors regarding how to compete, it does not require a business to turn a blind eye to information simply because its competitors are also aware of that same information. Nor does it require businesses to decline to take advantage of a service because its competitors already use that service.

148 F.4th at 1083–84. This case is far weaker than *Gibson* and *Cornish-Adebiyi* because those cases involved software that generated pricing recommendations—a feature absent here. There are no pricing recommendations here. The FAC should be dismissed on this basis alone.

**B.      Plaintiffs plead no horizontal agreement or "rim."**

Because the FAC does not allege that OB set, recommended, or enforced prices, Plaintiffs must plead another basis for inferring a horizontal agreement among the Originator Defendants.

3

They do not. Instead, Plaintiffs invoke *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939). But *Interstate Circuit* requires facts this case lacks: (1) allegations that the vertical agreements between OB and the Originator Defendants would be economically self-defeating absent coordination; (2) involvement of virtually all competitors in the relevant market; and (3) enforcement mechanisms. ECF No. 280 ("Mot.") at 29–31. Plaintiffs plead none of these.

Although *Interstate Circuit* recognized that accepting an invitation "to participate in a plan" could "establish an unlawful conspiracy" when "the necessary consequence of [that plan], if carried out, is restraint of interstate commerce," there is no coordinated "plan" here. 306 U.S. at 227. Nine Originator Defendants—a fraction of the thousands of entities in the mortgage industry, FAC ¶¶ 67, 73—allegedly subscribed to OB Products at some point during the alleged conspiracy period and received reports. *Id.* ¶ 7. Such unilateral actions cannot constitute a restraint of trade unless Plaintiffs also plead an agreement among the Originator Defendants to coordinate pricing or how to use those reports (they do not). Plaintiffs allege neither a horizontal agreement nor sufficient facts to overcome that pleading deficiency as *Interstate Circuit* requires. Moreover, providing market information without recommending or dictating how it should be used does not mean every OB Product user will use that data the same way or make the same decisions. This case includes no factual allegation (like the letter to movie exhibitors at issue in *Interstate Circuit*) that necessarily would result in increased prices. *See* 306 U.S. at 222.

Finally, while evidence of an agreement can take the form of continuing a vertical relationship after learning that an "isolated transaction" is "part of a larger [price-fixing] arrangement," *United States v. Masonite Corp.*, 316 U.S. 265, 275 (1942), that is not the case here. Plaintiffs allege only access to anonymized market data, with no mechanism for coordination, enforcement, or communication among the Originator Defendants. That is a "rimless wheel,"

which cases from across the country confirm is not actionable. *See* Mot. at 31–32.

### C. Plaintiffs do not allege parallel conduct.

To plead a Section 1 claim using circumstantial evidence, Plaintiffs must plausibly allege "parallel conduct . . . placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Cornish-Adebiyi*, 2024 WL 4356188, at *3 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiffs offer no non-conclusory allegations that the Originator Defendants acted in parallel in a manner probative of agreement.

In *RealPage*, the Court credited allegations of parallel changes in pricing strategy—specifically, a shift from keeping "heads in beds" to "price over volume"—but declined to credit generalized rent increases over a multi-year period. 709 F. Supp. 3d at 506, 508–509. Here, Plaintiffs do not allege any comparable shift in pricing strategy. Nor do they allege that the Originator Defendants adopted the same OB Product at the same time, used the same data fields, made the same pricing decisions, or changed pricing in the same direction after adoption. Instead, they offer aggregate before/after and user/non-user averages untethered to any Originator Defendant, OB Product, adoption date, or pricing decision—precisely the type of generalized showing rejected in *RealPage*. *Id.* at 508–09. The fact that prices increase over a multi-year period is "hardly surprising" and expected "even in a competitive, normally-functioning market." *Id.* at 509. It is not a plausible allegation of parallel conduct.

Finally, contrary to Plaintiffs' assertions, the OB Products do not provide a "structure designed to align pricing." Resp. at 12. That allegation appears nowhere in the FAC. What the FAC actually says is that the OB Products provide mortgage lenders with information they can use as guidance to "adjust pricing," FAC ¶ 78—by increasing, decreasing, or doing nothing at all.

5

**D. Plaintiffs' alleged "plus factors" do not raise a plausible inference of unlawful agreement.**

None of Plaintiffs' purported "plus factors" can convert a series of separate, vertical vendor agreements into a horizontal price-fixing agreement. In *RealPage*, the Court found the "most persuasive evidence of horizontal agreement" was that each defendant provided proprietary data, "knowing that RealPage would require the same from its horizontal competitors ***and use all of that data to recommend rental prices to its competitors***." 709 F. Supp. 3d at 510 (emphasis added). Here, Plaintiffs argue that "[m]ortgage lenders would never share such sensitive data unless they knew that competing lenders were likewise sharing the same data." Resp. at 5. But the FAC belies that argument—it does not allege that all PPE users subscribe to the OB Products at issue. Instead, the FAC alleges that "Optimal Blue does not limit Market Analytics and Market Data License to users of its PPE." FAC ¶ 87. Thus, there is no allegation that mortgage lenders had to "give to get" the data. Plaintiffs also do not allege that any proprietary data from any Defendant is "pooled or otherwise comingled into a common dataset against which an algorithm runs," or that any OB Product provides pricing recommendations "based on a pool of confidential competitor data." *Cornish-Adebiyi*, 2024 WL 4356188, at *2, 5. Indeed, anyone who wants to access data from the OB Products can do so without submitting any of their own data. Mot. at 18.

Plaintiffs' other plus factors fail too. *First*, Plaintiffs fail to plead an exchange of competitively sensitive information. The OB data regarding locked mortgages is specific to unique properties and borrowers. FAC ¶ 66. The FAC does not explain how that specific data could be relevant to determining future loans to *other* borrowers for *other* properties, let alone constitute sensitive information.

*Second*, Plaintiffs fail to allege price verification. At most, Plaintiffs allege visibility into anonymized and backward-looking data—not pricing recommendations, adherence reports,

deviation approvals, punishment, or other enforcement mechanisms. Monitoring where the rest of the market is through anonymized benchmarking does not violate Section 1. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 440–41 n.16 (1978); *Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 582–83 (1925).

*Third*, Plaintiffs fail to allege a meaningful common motive among Defendants. A generic desire to increase margins is not a cognizable common motive absent proprietary-data exchange, pricing recommendations, or adherence structures. *See In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 707–11 (N.D. Ohio 2025).

*Fourth*, Plaintiffs' allegations regarding opportunities to collude fall flat. Their Summit-meeting allegations do not identify which Defendant(s) attended, what was discussed, or how any meeting led to coordinated pricing. *See* Resp. at 23–24. Those vague allegations do not establish an opportunity to collude.

*Fifth*, Plaintiffs cannot bootstrap OB's broader platform of products and users into a higher market share. Plaintiffs tried that in their original complaint (ECF No. 1); they abandoned that theory and dismissed most of the original defendants in this case. The question before this Court is whether the presently-named Defendants had a meaningful share of a well-defined market. They did not. Plaintiffs do not dispute that the nine Originator Defendants are a mere sliver of the thousands of originators in the United States.

*Finally*, Plaintiffs' regression analysis cannot supply the missing inference of an agreement. The analysis is not tied to any Defendant or OB Product and instead relies on aggregated averages that assume the very conspiracy Plaintiffs must plausibly allege. It does not evince Defendant-specific parallel conduct or product-driven causation. It is not a plus factor. *See RealPage*, 709 F. Supp. 3d at 516 n.15.

Considered individually or together, Plaintiffs' asserted "plus factors" do not distinguish lawful independent conduct from an unlawful agreement.

### E. The rule of reason applies.

Plaintiffs plead a unique Section 1 claim, and there is no reason for the *per se* rule to apply. They argue that merely having *access* to aggregated or anonymized information in a software platform is price-fixing. FAC ¶¶ 6, 36, 81. No court has ever reached that determination, and unique purported competitive restraints should be analyzed under the rule of reason. *RealPage*, 709 F. Supp. 3d at 520–21. This Court reached a similar conclusion in *RealPage*, and Plaintiffs offer no reason to depart from that holding here. *Id.*

## II. Plaintiffs' Rule-of-Reason/Information-Exchange Theory Fails.

### A. Plaintiffs fail to allege that Defendants exchanged sensitive information.

Even recast as an information-exchange claim rather than a price-fixing conspiracy, the FAC fails because it lacks the requisite transactional specificity. To survive dismissal, the exchanged information must be granular, extensive, deanonymized, and current. *See Todd v. Exxon Corp.*, 275 F.3d 191, 211–13 (2d Cir. 2001). Although Plaintiffs repeatedly describe the OB Products' data as "real time" (Resp. at 4, 6, 16–17, 19–20), the FAC is much thinner. Indeed, it cites only generic marketing claims and executive statements with no factual allegations about granularity or specificity. FAC ¶ 78. The FAC does not identify which OB Products allegedly use "real time" data or describe the data at issue; Plaintiffs cannot fill that pleading gap by asserting in their Response that the FAC made the allegation as to all products.

But even if Plaintiffs alleged that all OB Products shared "real-time" data—and they do not—the claim fails under *Todd* because OB's data is anonymized and aggregated. *See* FAC ¶ 98, Figs. 7–12. Plaintiffs do not—and cannot—plead that the data identifies particular lenders or that decoding it could facilitate coordination. Such generic benchmarking and aggregated market data

8

are insufficient to state a Section 1 claim. *See In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7 n.7 (D. Minn. Aug. 8, 2019). This case is nothing like *American Column & Lumber Co. v. United States*, where the exchange was so granular and coercive that each participant would understand it as a directive to align on pricing. 257 U.S. 377, 410–11 (1921) (condemning information exchange plan requiring "daily, weekly and monthly reports of the minutest details of [defendants'] business to their rivals," enforced through "business honor and social penalties" that would "promptly expose" any member who deviated from the group's tacit understanding on pricing).

Finally, Plaintiffs' de-anonymization theory (Resp. at 35–36) is implausible, speculative, conclusory, and tellingly appears only in their Response; it therefore cannot be considered on a 12(b)(6) motion. The hypothetical examples do not plausibly show that any Defendant identified a competitor, monitored prices, or coordinated. *Compare Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*, 2020 WL 6134982, at *1 (N.D. Ill. Oct. 19, 2020) (nine defendants controlled 80% of the market and the exchanged "data was sufficiently detailed such that each [d]efendant could infer the company to which each data set referred") *with* FAC ¶ 67 (OB "serves roughly 3,500 lenders"). Plus, Plaintiffs admit that OB does not even "disclose a list of the mortgage lenders who use its Business Analytics Solutions." Resp. at 26. Even if de-anonymization were possible, neither the FAC (at ¶ 121) nor the Response explains how accessing data about borrowers' locked loans for unique properties could lead to competitor coordination as to future borrowers and properties.

**B.      Plaintiffs fail to allege anticompetitive effects or market power.**

Plaintiffs plead neither direct nor indirect evidence of anticompetitive effects. As to direct evidence, Plaintiffs rely solely on their regression analysis, Resp. at 36–37, but it suffers from the problems Defendants identified. *See* Mot. at 24–28. Plaintiffs plead no cognizable anticompetitive

effects in any relevant market—such as reduced output or other market-wide harm—and their regression cannot overcome those pleading deficiencies because it is not tied to any Originator Defendant, particular OB Product, specific adoption date, or causal mechanism.

Plaintiffs' indirect-effects theory also fails. Their only argument is that OB's customers as a whole—not limited to the nine Originator Defendants—account for "35% of all mortgage rate locks in the country." FAC ¶ 153; *see* Resp. at 37–39. But OB's purported market power is irrelevant because Plaintiffs do not allege that it fixes or even recommends prices, and they cannot rely on the market power of unidentified co-conspirators to cure that defect. The FAC alleges only that the nine Originator Defendants account for some tiny (yet, unknown) fraction of the 35% of mortgage locks OB advertises based on all of its customers. This is a far cry from *RealPage* where the plaintiffs alleged that "RealPage set[] prices for between 25% and 53% of multifamily units in 33 of the MSA submarkets." 709 F. Supp. 3d at 526.

## III. Plaintiffs' Group Pleading Is Impermissible.

Plaintiffs must plead facts demonstrating entitlement to relief as to each Defendant. Group pleading is impermissible where, as here, it obscures who participated in the conspiracy, what each defendant did to join it, and when. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436–37 (6th Cir. 2008). Plaintiffs do exactly that here, impermissibly lumping the nine Originator Defendants and five OB Products together without alleging which Defendant used which product, when, or how. Defendants thus cannot determine when or how they supposedly joined the conspiracy. This deficiency independently warrants dismissal.

## IV. Conclusion.

Defendants respectfully request that the Court grant their Joint Motion to Dismiss.

Dated: July 16, 2026

Respectfully submitted,

*/s/ J. Clayton Everett, Jr.*
J. Clayton Everett, Jr. (*Admitted pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
(202) 739-5860
clay.everett@morganlewis.com

Michelle Park Chiu (*Admitted pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1184
michelle.chiu@morganlewis.com

*/s/ Andrew J. Pulliam*
Andrew J. Pulliam (TN Bar No. 016863)

**BRICKER GRAYDON WYATT, LLP**
333 Commerce Street, Suite 830
Nashville, TN 37201-1826
(615) 251-6675
apulliam@bricker.com

*Counsel for Defendant Black Knight, Inc.*

*/s/ Megan E. Gerking*
Megan E. Gerking (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
**MORRISON & FOERSTER LLP**
2100 L Street NW
Washington, D.C. 20037
(202) 887-1500
mgerking@mofo.com
rmanoso@mofo.com

*Counsel for Beeline Loans, Inc.*

*/s/ Stephen J. Zralek*
Stephen J. Zralek (#18971)
**SPENCER FANE LLP**
511 Union Street, Suite 1000

*/s/ Matthew P. Previn*
Matthew P. Previn (*pro hac vice*)
matthewprevin@paulhastings.com
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Ryan Phair (*pro hac vice*)
ryanphair@paulhastings.com
Michael Murray (*pro hac vice*)
michaelmurray@paulhastings.com
Jonice Gray (*pro hac vice*)
jonicegray@paulhastings.com
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, D.C. 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

Stephen McIntyre (*pro hac vice*)
stephenmcintyre@paulhastings.com
**PAUL HASTINGS LLP**
515 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Margaret M. Siller
msiller@MaynardNexsen.com
**MAYNARD NEXSEN PC**
1131 4th Ave. South
Suite 320
Nashville, TN 37210
Telephone: (629) 258 2253

*Counsel for Guild Mortgage Company*

*/s/ Samuel P. Funk*
Samuel P. Funk (TN Bar No. 019777)
**SIMS|FUNK, PLC**
3102 West End Ave., Suite 1100

11

Nashville, TN 37219
Telephone: (615) 238-6305
szralek@spencerfane.com

Donald G. Heeman (*pro hac vice*)
**SPENCER FANE LLP**
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7005
dheeman@spencerfane.com

John V. Picone III (*pro hac vice*)
**SPENCER FANE LLP**
225 West Santa Clara Street, Suite 1500
San Jose, CA 95113
Telephone: (408) 918-2805
jpicone@spencerfane.com

Shelby Menard (*pro hac vice*)
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, TX 75024
Telephone: (972) 324-0352
smenard@spencerfane.com

*Counsel for Churchill Mortgage Corporation*

/s/ Belinda Lee
Belinda Lee (*pro hac vice*)
Ashley M. Bauer (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
belinda.lee@lw.com
ashley.bauer@lw.com

Lawrence E. Buterman (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
lawrence.buterman@lw.com

Emily Campbell Taube (BPR #019323)
**BURR & FORMAN LLP**
222 Second Avenue, South Suite 2000

Nashville, TN 37203
Telephone: (615) 292-9335
sfunk@simsfunk.com

William C. Mayberry (*pro hac vice*)
Jason D. Evans (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College Street, 34th Floor
Charlotte, North Carolina 28202
Telephone: (704) 998-4050
Bill.Mayberry@troutman.com
Jason.Evans@troutman.com

Bradley C. Weber (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Phone: (214) 740-8497
Brad.Weber@troutman.com

*Counsel for Movement Mortgage, LLC*

/s/ Evan P. Moltz
Evan P. Moltz
**THOMPSON COBURN LLP**
2311 Highland Avenue South
Suite 330
Birmingham, AL 35205
P: 205 769 4306
F: 205 769 4331
emoltz@thompsoncoburn.com

John S. Kingston (*pro hac vice*)
Kristen E. Sanocki (*pro hac vice*)
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, MO 63101
P: 314 552 6464
F: 314 552 7000
jkingston@thompsoncoburn.com
ksanocki@thompsoncoburn.com

Nicole L. Williams (*pro hac vice*)
Jocelin A. Tapia (*pro hac vice*)
**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200

12

Nashville, TN 37201
Telephone: (615) 724-3237
etaube@burr.com

*Counsel for CrossCountry Mortgage, LLC*

/s/ Kenneth A. Weber
Kenneth A. Weber (TN Bar No. 15730)
Ryan P. Loofbourrow (TN Bar No. 33414)
Baker, Donelson, Bearman,
**CALDWELL & BERKOWITZ, P.C.**
1600 West End Avenue, Suite 2000
Nashville, TN 37203
(615) 726-5600
kweber@bakerdonelson.com
rloofbourrow@bakerdonelson.com

*Counsel for First Community Mortgage, Inc.*

/s/ Justin P. Murphy
Justin P. Murphy
Matt Schock
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
Tel.: (202) 861-1530
Fax: (202) 861-1783
jpmurphy@bakerlaw.com
mschock@bakerlaw.com

Bridget S. McCabe
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars
Suite 2700
Los Angeles, CA 90067
Tel.: (310) 442-8844
Fax: (310) 820-8859
bmccabe@bakerlaw.com

W. David Bridgers
**WADDEY ACHESON LLC**
1030 16th Avenue South
Suite 300
Nashville, Tennessee 37212
Tel.: (615) 839-1100

Dallas, TX 75201
P: 972 629 7170
F: 972 629 7171
nwilliams@thompsoncoburn.com
jtapia@thompsoncoburn.com

*Counsel for New American Funding, LLC*

/s/ Stephen M. Medlock
Stephen M. Medlock
Adam L. Hudes
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W.
Suite 500 W
Washington, D.C. 20037
Tel: (202) 639-6500
Fax: (202) 639-6604
smedlock@velaw.com
ahudes@velaw.com

Michael W. Scarborough
**VINSON & ELKINS LLP**
555 Mission Street
Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
Fax: (415) 651-8786
mscarborough@velaw.com

Nicole L. Castle
**VINSON & ELKINS LLP**
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
ncastle@velaw.com

/s/ Jessalyn Zeigler
**BASS, BERRY & SIMS PLC**
21 Platform Way South
Suite 3500
Nashville, TN 37203
Tel: (615) 742-6289
jzeigler@bassberry.com

*Counsel for Optimal Blue, LLC and Constellation Software, Inc.*

13

david@waddeyacheson.com

*Counsel for Guaranteed Rate, Inc.*

*/s/ Aliki Sofis*

Aliki Sofis (*pro hac vice*)
Eric D. Wolkoff (*pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
alikisofis@quinnemanuel.com
ericwolkoff@quinnemanuel.com

*/s/ Michael D. Bonanno*

Michael D. Bonanno (*pro hac vice*)
Ingrid Jernudd (*pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8225
mikebonanno@quinnemanuel.com
ingridjernudd@quinnemanuel.com

*/s/ Andrew Gardella*

Andrew Gardella, Esq. (TN BPR #27247)
**MARTIN, TATE, MORROW &
MARSTON, P.C.**
315 Deaderick Street, Suite 1550
Nashville, TN 37238
T: (615) 627-0668
F: (615) 627-0669
agardella@martintate.com

*Counsel for PennyMac Loan Services, LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 16th day of July, 2026.

/s/ Jessalyn H. Zeigler

15